IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARION C. WOLFE, JR.,<br><br>     Petitioner,<br><br> vs.<br><br>MATTHEW CATE, Secretary of the<br>California Department of Corrections and<br>Rehabilitation,[1]<br><br>    Respondent. | Case No. 2:02-cv-01958-JKS<br><br><br>MEMORANDUM DECISION |

   Petitioner, Marion Wolfe, Jr., proceeding *pro se*, has filed a Petition for Writ of Habeas

Corpus under 28 U.S.C. § 2254.  Wolfe was discharged to parole on April 27, 2007, and is

currently in the custody of the California Department of Corrections and Rehabilitation.[2]

Respondent has filed an answer, and Wolfe has not filed a traverse.

---

   [1]  Matthew Cate is substituted for Edward D. Alamerida.  Fed. R. Civ. Pro. 25.

   [2]  On December 5, 2007, a magistrate judge correctly determined that Wolfe's release
does not defeat jurisdiction in this matter.  A jurisdictional prerequisite of 28 U.S.C. § 2254 is
that the petitioner be "in custody pursuant to the judgment of a state court."  The conditions and
restraints inherent in parole are sufficient to satisfy the custody requirement. *Jones v.
Cunningham*, 371 U.S. 236, 242 (1963).  Furthermore, once a federal court has jurisdiction over
a state prisoner's habeas action, "it is not defeated by the release of the petitioner prior to
completion of the proceedings on such application." *Carafas v. LaVallee*, 391 U.S. 234, 238
(1968).  Accordingly, Wolfe's release to parole does not defeat jurisdiction.

BACKGROUND/PROCEDURAL HISTORY[3]

Search Conducted February 3, 1999

On February 3, 1999, Sacramento County Sheriff's Deputies Gordon Beamer and Michael Brown, in uniform and driving a marked patrol vehicle, stopped the vehicle defendant was driving for failure to display a proper registration tag. Deputy Beamer asked defendant, the vehicle's sole occupant, for his driver's license. Defendant gave Beamer a California identification card and told Beamer he did not have a driver's license because it had been suspended. Beamer arrested defendant for driving with a suspended license and placed him in the patrol car. Notwithstanding defendant's refusal to give consent to search the vehicle, a black box or case that was in plain view on the front seat of his vehicle was searched and drug contraband was found.

Search Conducted June 4, 1999

On June 4, 1999, at approximately 11:00 p.m., Sacramento Police Officer Ernest Lockwood made contact with Shirley Farr, who was sitting with another woman on the stoop of a boarded-up house in the Oak Park neighborhood of Sacramento. The area was one of high crime in which Lockwood made numerous drug arrests. Lockwood was aware that boarded-up buildings in the area were trespassed upon for purposes of a drug use, which was his reason for contacting Farr. In speaking with Farr, he learned she was on parole, a face he verified by computer check. Farr said that she was currently staying at a residence with "John," three doors down. Lockwood, accompanied by Farr, went to "John's" residence to investigate whether Farr was involved in "any type of criminal activity."

At the residence, Officer Lockwood told one John Barnes that he was there to conduct a parole search, and Barnes made no objection. During a protective sweep of the residence, Lockwood observed defendant, who was staying with Barnes, sitting in a chair in the living room with a plate on his lap. On a coffee table, within four feet of defendant, was a rock cocaine pipe. Defendant was the only person in the living room at the time. Lockwood arrested and searched defendant, and found both cocaine and heroin on his person.

Proceedings

Pursuant to a consolidated information in Sacramento County Court Case Nos. 99F00996 and 99F04609, Wolfe filed a motion to suppress evidence seized by law enforcement during two separate incidents. The trial court denied the motion, and Wolfe subsequently entered a plea whereby, in exchange for a stipulated sentence of nine years and the dismissal of three drug-related offenses arising out of Case No. 99F00996, he pleaded no contest to one count of

---

[3] The following facts are taken verbatim from the unpublished opinion of the California Court of Appeal, Third Appellate District. (See Lodged Doc. No. 9 at 3-9.) Under AEDPA, the determination of these facts is presumed to be correct, and Wolfe has the burden of rebutting that presumption by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

possession of cocaine and heroin originating from Case No. 99F04609, and admitted a prior strike conviction as well as service of three prior prison terms.

Wolfe appealed his conviction to the California Court of Appeal, Third Appellate District, which affirmed his conviction on June 11, 2002. Wolfe then filed a petition for writ of mandate with the California Supreme Court. The court treated the filing as a petition for review and denied it on November 28, 2001. Subsequently, Wolfe has filed several petitions for habeas corpus with the California Supreme Court along with a petition for review, all of which were denied.

On September 9, 2002, Wolfe filed a federal petition for a writ of habeas corpus which he has supplemented and amended several times. On September 25, 2003, a Magistrate Judge issued a findings and recommendations report recommending that the district court stay the proceedings pending the exhaustion of state remedies with respect to claims 11 and 16 and dismiss claims 14, 17 and 19. On October 24, 2003, the district court adopted the Magistrate Judge's findings and recommendations. After several other filings, Wolfe filed his second amended petition for habeas corpus. Respondent has replied, Wolfe has not filed a traverse and the petition is ripe for decision. Respondent asserts that Claims 1 and 6 are procedurally barred, claims 14, 17 and 19 are non-cognizable and that claim 22 has been excluded from federal review.

<u>STANDARD OF REVIEW</u>

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time the state court renders its decision or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[4] The Supreme Court has explained that "clearly established Federal law" in §

---

[4] 28 U.S.C. § 2254(d); *see Williams v. Taylor*, 529 U.S. 362, 404-06 (2000); *see also Lockyer v. Andrade,* 538 U.S. 63, 70-75 (2003) (explaining this standard).

2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision."[5]  The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts.[6]  Thus, where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"[7]  When a claim falls under the "unreasonable application" prong, a state court's application of Supreme Court precedent must be objectively unreasonable, not just incorrect or erroneous.[8]  The Supreme Court has made clear that the objectively unreasonable standard is a substantially higher threshold than simply believing that the state court determination was incorrect.[9]  "[A]bsent a specific constitutional violation, federal habeas corpus review of trial error is limited to whether the error 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"[10]  In a federal habeas proceeding, the standard under which this Court must assess the prejudicial impact of constitutional error in a state-court criminal trial is whether the error had a substantial

---

[5] *Williams*, 529 U.S. at 412.

[6] *Early v. Packer*, 537 U.S. 3, 10 (2002).

[7] *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (alterations by the Court); *see Wright v. Van Patten*, 552 U.S. 120, 127 (2008) (per curiam); *Kessee v. Mendoza-Powers*, 574 F.3d 675, 678-79 (9th Cir. 2009); *Moses v. Payne*, 555 F.3d 742, 753-54 (9th Cir. 2009) (explaining the difference between principles enunciated by the Supreme Court that are directly applicable to the case and principles that must be modified in order to be applied to the case; the former are clearly established precedent for purposes of § 2254(d)(1), the latter are not).

[8] *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (internal quotation marks and citations omitted).

[9] *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

[10] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).

4

and injurious effect or influence in determining the outcome.[11]  Because state court judgments of conviction and sentence carry a presumption of finality and legality, the petitioner has the burden of showing by a preponderance of the evidence that he or she merits habeas relief.[12]

In applying this standard, this Court reviews the last reasoned decision by the state court.[13]  State appellate court decisions that affirm a lower court's opinion without explanation are presumed to have adopted the reasoning of the lower court.[14]  Under California's unique habeas procedure, a defendant who is denied habeas relief in the superior court files a new original petition for relief in the court of appeal.  If denied relief by the court of appeal, the defendant has the option of either filing a new original petition for habeas relief or a petition for review of the court of appeal's denial in the California Supreme Court.[15]   This is considered as the functional equivalent of the appeal process.[16]  Under AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence.[17]  This presumption applies to state trial courts and appellate courts alike.[18]

When there is no reasoned state court decision denying an issue presented to the state court and raised in a federal habeas petition, this Court must assume that the state court decided

---

[11] *Fry v. Pliler*, 551 U.S. 112, 121 (2007) (adopting the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)).

[12] *Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002); *see Wood v. Bartholomew*, 516 U.S. 1, 8 (1995) (per curiam) (stating that a federal court cannot grant "habeas relief on the basis of little more than speculation with slight support").

[13] *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004).

[14] *Ylst*, 501 U.S. at 802-03.

[15] *See Carey v. Saffold*, 536 U.S. 214, 221-22 (2002).

[16] *Id.* at 222.

[17] 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

[18] *Stevenson v. Lewis*, 384 F.3d 1069, 1072 (9th Cir. 2004).

all the issues presented to it and perform an independent review of the record to ascertain whether the state court decision was objectively unreasonable.[19]  The scope of this review is for clear error of the state court ruling on the petition:

> [A]lthough we cannot undertake our review by analyzing the basis for the state court's decision, we can view it through the "objectively reasonable" lens ground by *Williams* . . . .  Federal habeas review is not *de novo* when the state court does not supply reasoning for its decision, but an independent review of the record is required to determine whether the state court clearly erred in its application of controlling federal law.  Only by that examination may we determine whether the state court's decision was objectively reasonable.[20]

"[A]lthough we independently review the record, we still defer to the state court's ultimate decision."[21]

## DISCUSSION

In his second amended petition Wolfe raises 22 grounds for relief.  Respondent has raised affirmative defenses to claim numbers 1, 6, 14, 17, 19, and 22.  For the purpose of clarity and continuity, this Court will address those claims first.

### Claims 1 and 6

In claim 1, Wolfe alleges that he was not properly arraigned after his arrest on June 3, 1999.  In claim 6, Wolfe argues that law enforcement lacked probable cause to arrest him on June 3, 1999.  Both of these claims were raised by Wolfe in a state petition for writ of habeas corpus filed with the California Supreme Court on October 22, 2001.  The Court cited *In re Dixon*, 41 Cal.2d 756 (1953), and rejected both claims as procedurally barred.   Respondent asserts the imposition of this procedural bar forecloses consideration of the claim by this Court.

---

[19] *Reynoso v. Giurbino*, 462 F.3d 1099, 1109 (9th Cir. 2006); *Pham v. Terhune*, 400 F.3d 740, 742 (9th Cir. 2005) (per curiam).

[20] *Delgado v. Lewis* (*Delgado II*), 223 F.3d 976, 982 (9th Cir. 2000) (internal citation omitted); *see also Lewis v. Mayle*, 391 F.3d 989, 996 (9th Cir. 2004).

[21] *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002).  This Court notes, however, that the question of the deference to be given summary denials was left open by the Ninth Circuit sitting en banc.  *See Pinholster v. Ayers*, 590 F.3d 651, 663 (9th Cir. 2009) (en banc); *Richter v. Hickman*, 578 F.3d 944, 951 n.5 (9th Cir. 2009) (en banc).  The issue is presently pending before the Supreme Court *sub nom, Harrington v. Richter*, No. 09-587.

Federal courts "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment."[22]  This Court may not reach the merits of procedurally defaulted claims, that is, claims "in which the petitioner failed to follow applicable state procedural rules in raising the claims . . . ."[23]   "[I]n order to constitute adequate and independent grounds sufficient to support a finding of procedural default, a state rule must be clear, consistently applied, and well established at the time of the petitioner's purported default."[24]

Under California law, contentions that could have been raised during direct appeal, but were not, generally cannot be renewed in a petition for habeas corpus.[25]  "The only exception to this rule are petitions which allege facts which, if proven, would establish that a fundamental miscarriage of justice occurred as a result of the proceedings leading to conviction and/or sentence."[26]  "[F]or purposes of the exception to the procedural bar against successive or untimely petitions, a "fundamental miscarriage of justice" will have occurred in any proceeding in which it can be demonstrated: (1) that error of constitutional magnitude led to a trial that was so fundamentally unfair that absent the error no reasonable judge or jury would have convicted the petitioner; (2) that the petitioner is actually innocent of the crime or crimes of which the petitioner was convicted; (3) that the death penalty was imposed by a sentencing authority which had such a grossly misleading profile of the petitioner before it that absent the trial error or

---

[22]  *Coleman v. Thompson,* 501 U.S. 722, 729 (1991).

[23]  *Sawyer v. Whitley,* 505 U.S. 333, 338 (1992).

[24]  *Morales v. Calderon,* 85 F.3d 1387, 1393 (9th Cir. 1996) (internal quotation marks and citation omitted).

[25]  *In re Terry,* 484 P.2d 1375, 1387 (Cal. 1971).

[26]  *In re Clark*, 5 Cal. 4th 750, 797 (Cal. 1993).

omission no reasonable judge or jury would have imposed a sentence of death; (4) that the petitioner was convicted or sentenced under an invalid statute."[27]

Wolfe does not dispute the fact that he did not raise claims 1 and 6 to either the California Court of Appeals or the California Supreme Court.  Because Wolfe's failure to raise these claims on direct appeal was not excused by the California Supreme Court, Wolfe's failure to raise them on appeal constitutes a state law ground that is independent of any federal question and adequate to support the judgment.[28]  Accordingly, claims 1 and 6 are procedurally barred.

<u>Claims 14, 17, 19</u>

In claim 14 Wolfe alleges the state trial court should have considered his motion for release.  In claim 17, Wolfe claims the California Supreme Court erred in denying his petition for writ of mandate.  In claim 19 Wolfe asserts that the staff at the California Department of Corrections and the Duel Vocational Institution denied him access to the law library between April 23 and May 15, 2002, resulting in the denial of a habeas petition.  Wolfe alleged these exact three claims in his original petition for writ of habeas corpus. (Docket No. 1).  As noted above, on October 24, 2003, the district court adopted the findings of the Magistrate Judge that claims 14, 17 and 19 were non-cognizable and ordered that they be dismissed.  Therefore, these claims are barred from federal habeas review.

<u>Claim 22</u>

In claim 22 Wolfe alleges that his no-contest plea was involuntary because his trial counsel was ineffective.  On April 29, 2005, Wolfe filed a motion to supplement his amended petition for writ of habeas corpus with six additional claims, one of which contained the exact issue raised in claim 22.  Respondent moved to dismiss claim 22, on the ground that this claim was unexhausted; and on December 5, 2007, the Magistrate Judge ruled that claim 22 did not

---

[27] *Id*. at 797-798.

[28] *In re Robbins*, 18 Cal.4th 770, 811 (Cal. 1998); *Fields v. Calderon*, 125 F.3d 757, 760-61 (9th Cir. 1997) (quoting *Calderon v. Bean*, 96 F.3d 1126, 1131 (9th Cir. 1996)).

relate back to the original petition. (Docket No. 94). On February 5, 2008, the district court adopted the Magistrate Judge's findings and recommendations. (Docket No. 98). In doing so, the Court denied Petitioner's motion to amend his petition with respect to claim 22. (Docket No. 98).

In the instant petition, Wolfe again alleges that his no contest plea was involuntary because his trial counsel was ineffective. Since this claim is the same claim the district court prohibited him from alleging in his second amended petition, claim 22 is excluded from federal court review.

<u>Claims 2 and 3</u>

In claim 2 Wolfe asserts his trial counsel was ineffective for failing to protect Wolfe's constitutional due process right to an arraignment. In claim 3 Wolfe asserts that his appellate counsel was ineffective for failing to raise the alleged arraignment violation.

Under *Strickland*, to demonstrate ineffective assistance of counsel, Petitioner must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense.[29] A deficient performance is one in which counsel made errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment.[30] Petitioner must show that defense counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different.[31] An analysis that focuses "solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective."[32]

---

[29] *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

[30] *Id.*

[31] *Hill v. Lockhart,* 474 U.S. 52, 57 (1985).

[32] *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993); *see Strickland*, 466 U.S. at 687; *see also Kimmel v. Morrison*, 477 U.S. 365, 374 (1986) ("The essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect"); *United States v. Cronic*, 466 U.S. 648, 258 (1984) ("the right to the effective assistance of counsel is

Wolfe's claims of ineffective assistance of counsel are based on the claim that he was not properly arraigned. After reviewing the record, this Court has determined that Wolfe was, in fact, properly arraigned. Wolfe was arrested on Friday, June 4, 1999. On Monday, June 7, 1999, the record clearly indicates that Wofe was arraigned and informed of his rights that same day.[33] Thus, the arraignment itself was timely under California law.[34]

The United States Supreme Court has held, "that the right to counsel guaranteed by the Sixth Amendment applies at the first appearance before a judicial officer at which a defendant is told of the formal accusation against him and restrictions are imposed on his liberty."[35] At the initial hearing, the magistrate informed Wolfe that he had a constitutional right to be represented by counsel, and that he could have an attorney appointed to represent him if he were indigent. Wolfe informed the magistrate he would like to retain private counsel and, at that time, the magistrate stayed the proceeding for two days so that Wolfe could retain private counsel.[36] On June 9, 1999, Wolfe appeared to finish the proceedings, wherein he was represented by retained Counsel, Attorney Curry.[37] Thus, it is clear the magistrate took reasonable steps to protect Wolfe's right to retain counsel to represent him during his arraignment.

Wolfe next claims that his arraignment was ineffective because he claims that he was not allowed to enter a not guilty plea by reason of insanity at his initial appearance. However, as discussed above, Wolfe had a constitutional right to be represented by counsel during his arraignment; a right which he invoked. Therefore, the magistrate would have violated Wolfe's

---

recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial. Absent some effect of challenged conduct on the reliability of the trial process, the Sixth Amendment guarantee is generally not implicated.").

[33] CT 138.

[34] California Penal Code § 825.

[35] *Rothgery v. Gillespie County, Tex.*, 128 S.Ct. 2578, 2581 (2008).

[36] CT 138.

[37] CT 138.

right to counsel if it had allowed him to plead not guilty by reason of insanity on June 7, 1999, without desired counsel being present. Wolfe's arraignment was not defective because he was not allowed to enter a not guilty by reason of insanity at his initial appearance on June 7, 1999.

To the extent that Wolfe argues that he was absolutely precluded from pleading not guilty by reason of insanity to the information, he is not entitled to relief.[38] During the plea colloquy, the trial court asked Wolfe whether he had been threatened or forced in any way to plead no contest. Wolfe responded, "No."[39] The court then accepted the plea and found that Wolfe's waivers had been made knowingly, intelligently, and voluntarily.[40] Furthermore, during Wolfe's motion to withdraw his plea, independent counsel investigated Wolfe's allegations that his previous counsel and a psychologist colluded to deprive him of his insanity defense. The independent counsel concluded that there were no grounds to suggest that Wolfe was insane at the time of the alleged offense.[41] Aside from making allegations that he was "not allowed" to plead not guilty by reason of insanity, Wolfe has not provided any evidence in support of this allegation.

Finally, Wolfe claims the arraignment was defective because he was prevented from having a fair probable cause determination in Case No. 99F04609. The Supreme Court has held that a criminal defendant's right to a judicial determination by a neutral magistrate as to whether there is probable cause to believe that he or she has committed the crime with which he or she has been charged.[42] However, under California law, in cases where the defendant has been charged with a felony, this hearing is held at the time that an information or indictment is filed,

---

[38] Several times throughout his petition, Wolfe claims that he was "prevented" from pleading not guilty by reason of insanity.

[39] R.T. p. 106.

[40] R.T. p. 109.

[41] R.T. p. 128.

[42] *Gerstein v. Pugh*, 420 U.S. 103, 113-15 (1975).

not at the time the defendant is arraigned.[43]   Because Wolfe has not shown that this policy is

contrary to the Supreme Court's holding in *Gerstein*, he is unable to show that his arraignment

was improper.[44]   Accordingly, because Wolfe's arraignment was not improper, he is unable to

show that his counsel was deficient for failing to raise the issue to the trial court.[45]   Similarly, his

appellate counsel was not ineffective for failing to raise the issue on appeal. [46]   Wolfe is not

entitled to relief on either claim 2 or claim 3.

Claim 4

In claim 4 Wolfe contends that the arresting officer did not have probable cause to search

him, therefore, the contraband that the officer discovered should have been suppressed.

Wolfe's no contest plea with respect to possession of cocaine and heroin bars federal

habeas relief on this claim.   A defendant who enters a valid guilty plea, or a plea of no contest

cannot on habeas corpus challenge a pre-plea constitutional violation.[47]   Therefore, upon entering

a plea of guilty or no contest, a defendant can only challenge the voluntary and intelligent

---

[43]   California Penal Code, § 995(a).

[44]   *Gerstein* held that ordinarily the Fourth Amendment requires a probable cause determination for the commencing of criminal charges only when a defendant suffers extended restraints on his liberty other than merely having to appear for trial.   *Gerstein* 420 U.S. at 125 fn. 26.

[45]   *Strickland*, 466 U.S. at 687.

[46]   The failure of appellate counsel to raise meritless or weak issues does not constitute ineffective assistance of counsel.   *See Jones v. Barnes*, 463 U.S. 745, 751–52 (1983) (holding that appellate counsel does not have an obligation to raise every nonfrivolous argument); *Miller v. Keeney*, 882 F.2d 1428, 1428 (9th Cir. 1989) (holding that appellate counsel's failure to raise a weak issue did not constitute ineffective counsel).

[47]   *See Haring v. Prosise,* 462 U.S. 306, 319-320 (1983); *Tollett v. Henderson,* 411 U.S. 258, 266-67 (1973).

character of the plea and the competency of counsel's advice to enter the plea in federal habeas proceedings.[48]

Wolf's Fourth Amendment argument is also foreclosed by the Supreme Court decision in *Stone*.[49]  Under the holding in *Stone*, "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim," federal habeas corpus relief will not lie for a claim that evidence recovered through an illegal search or seizure was introduced at trial.[50]  The Ninth Circuit has made it clear that all *Stone* requires is that the State provide a state prisoner a fair and full opportunity to litigate his Fourth Amendment claim.[51]  "The relevant inquiry is whether petitioner had the opportunity to litigate his claim, not whether he did in fact do so or even whether the claim was correctly decided."[52]  In this case, Wolfe was provided a fair and full opportunity to present his claims.  He raised the issue in a pretrial motion, the trial judge held a hearing on the issue; the trial court denied the motion and Wolfe subsequently entered a plea of no contest.  Claim 4 is without merit.

<u>Claims 5, 7, 8 and 9</u>

In claim 5 Wolfe contends that his arrest was arbitrary, and violated the Fourth Amendment because two similarly situated individuals who were found to be in possession of a cocaine pipe were issued citations, whereas Wolfe was placed under arrest for the same violation.  In claim 7 Wolfe contends that the police improperly used the host's parole status as an excuse to conduct an otherwise improper search.  In claim 8 Wolfe claims that the officers

---

[48]  *See Hill v. Lockhart,* 474 U.S. 52, 56-57 (1985); *Tollett,* 411 U.S. at 267.  Cal. Penal Code § 1016 ("A plea of nolo contendere shall be considered the same as a plea of guilty . . . . The legal effect of such a plea, to a crime punishable as a felony, shall be the same as that of a plea of guilty for all purposes." ); *see also Ortberg v. Moody,* 961 F.2d 135, 137-38 (9th Cir. 1992) (applying *Tollett* to no contest plea).

[49]  *Stone v. Powell*, 428 U.S. 465 (1976).

[50]  *Id.* at 482.

[51]  *See Moormann v. Schiro*, 426 F.3d 1044, 1053 (9th Cir. 2005).

[52]  *Ortiz-Sandoval v. Gomez*, 81 F.3d 891, 899 (9th Cir. 1996).

who arrested him on February 3, 1999, did not have a reason to stop his car or conduct a search of the "black box" contained therein.   In claim 9, Wolfe contends that his February 3, 1999, arrest was simply an improper pretext to allow the officers to search the "black box."

Each of these claims raise Fourth Amendment challenges to searches and seizures (arrests) which became the bases for Information Nos. 99F00996 and 99F04609.  As noted above, Wolfe's no contest plea with respect to the consolidated charges bars federal habeas relief on these claims based on  pre-plea constitutional violations.[53]  Additionally, Wolf's Fourth Amendment arguments are also foreclosed by the Supreme Court decision in *Stone*.[54]  As discussed above, Wolfe was given a full and fair opportunity to challenge the propriety of arrest and the admission of the narcotic evidence.  Claims 5, 7, 8 and 9 are foreclosed and are without merit.

<u>Claim 10</u>

In claim 10 Wolfe asserts that the judge who heard Wolfe's motion to suppress was biased and should have recused himself.  Wolfe's motion to suppress was originally set to be heard by Judge Mullen, who recused himself after he learned that one of the witnesses, Deputy Beamer, was his former bailiff, whom he held in high regard; the hearing was transferred to Judge Long.  It was subsequently discovered that another one of the witnes who scheduled to testify at the hearing was Deputy Brown, Judge Long's former bailiff.  Judge Long also presided over Wolfe's trial relating to a prior strike conviction in 1985.  Wolfe claims that Judge Long should have recused himself because there is no way he could have been unbiased toward Wolfe's arguments.

---

[53] *See Hill,* 474 U.S. at 56-57; *Tollett,* 411 U.S. at 267.  Cal. Penal Code § 1016 ("A plea of nolo contendere shall be considered the same as a plea of guilty . . . .  The legal effect of such a plea, to a crime punishable as a felony, shall be the same as that of a plea of guilty for all purposes."); *see also Ortberg,* 961 F.2d at 137-38 (applying *Tollett* to no contest plea).

[54] *Stone*, *supra.*

14

As with previous claims, Wolfe's no contest plea with respect to the consolidated charges bars federal habeas relief on these claims based on pre-plea constitutional violations.[55]   Wolfe's claim is therefore foreclosed.

Wolfe's claim is also without substantive merit.  Because Wolfe is not entitled to relief unless the decision of the state court was contrary to clearly established Federal law, as determined by the Supreme Court of the United States, or was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding, we examine federal law on recusal.[56]   A federal judge is not disqualified from hearing a matter, even though he or she decided a previous, distinct case in a manner adverse to the complaining party.[57]   Additionally, the fact that a judge might be personally acquainted, or even friendly, with a witness does not require recusal.[58]   These types of extra-judicial contacts have not been enough

---

[55]   *See Hill,* 474 U.S. at 56-57; *Tollett,* 411 U.S. at 267.  Cal. Penal Code § 1016 ("A plea of nolo contendere shall be considered the same as a plea of guilty . . . .  The legal effect of such a plea, to a crime punishable as a felony, shall be the same as that of a plea of guilty for all purposes." ); *see also Ortberg,* 961 F.2d at 137-38 (applying *Tollett* to no contest plea).

[56] 28 U.S.C. § 2254(d); *see Williams*, 529 U.S. at 404-06; *see also Lockyer,* 538 U.S. at 70-75 (explaining this standard).

[57]   *United States v. Harris,* 458 F.2d 670 (5th Cir. 1972); *United States v. Goeltz,* 513 F.2d 193, 30 A.L.R. Fed. 488 (10th Cir. 1975).  Where the defendants were charged with willful destruction of United States property in connection with an act of political protest, the district court judge properly refused to recuse himself on grounds that he had presided over an earlier bench trial of one of the defendants for a similar act.  *United States v. Liteky*, 973 F.2d 910 (11th Cir. 1992), *judgment aff'd*, 510 U.S. 540, 114 S. Ct. 1147, 127 L. Ed. 2d 474 (1994).

[58]   Rarely does a judge's mere acquaintance with a party or witness justify recusal.  *See, e.g., United States ex rel. Perry v. Cuyler,* 584 F.2d 644, 647 (3d Cir.1978), *cert. denied*, 440 U.S. 925 (1979) (judge who had attended the funeral of murdered police officer could preside over the alleged murderer's criminal prosecution); *United States v. Meyerson*, 677 F.Supp. 1309 (S.D.N.Y. 1988) (judge who had met defendant on only two occasions need not recuse from criminal case); *M.K. Metals, Inc. v. National Steel Corp.*, 593 F.Supp. 991, 994-95 (N.D.Ill. 1984) (judge's friendship with the principal of a "think-tank" that was providing an expert witness to the defendant did not justify recusal); *United States v. Conforte*, 457 F.Supp. 641 (D.C. Nev. 1978), *aff'd*, 624 F.2d 869, *cert. denied*, 449 U.S. 1012 (1980) (recusal not required in criminal case in which defendant had dozens of social encounters with judge at bridge tournaments, despite the fact that the judge had publicly expressed a negative impression of the

to overcome the strong presumption that a judge is impartial.  The facts alleged by Wolfe establish only an acquaintance with the defendant and a witness.  These facts are not sufficient to call into question Judge Long's impartiality.

Claim 11

In claim 11 Wolfe contends that the trial court's interpretation of state law relating to parole and probation searches was improper.  To the extent that Wolfe raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding.  It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law.[59]  "[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."[60]  This principle applied to federal habeas review of state convictions long before AEDPA.[61]  A federal court errs if it interprets a state legal doctrine in a manner that directly conflicts with the state supreme court's interpretation of the law.[62]  It does not matter

---

defendant).  This case falls solidly in line factually with this series of cases.

[59] *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (it is presumed that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002); *see also Engle v. Isaac*, 456 U.S. 107, 119 (1982) (challenging the correctness of the application of state law does not allege a deprivation of federal rights sufficient for habeas relief); *Bell v. Cone,* 543 U.S. 447, 455 (2005) (a federal court may not lightly presume that a state court failed to apply its own law).

[60] *Bradshaw v. Richey,* 546 U.S. 74, 76 (2005); *see West v. AT&T,* 311 U.S. 223, 236 (1940) ("[T]he highest court of the state is the final arbiter of what is state law.  When it has spoken, its pronouncement is to be accepted by federal courts as defining state law . . . .").

[61] *See Mullaney v. Wilbur,* 421 U.S. 684, 691 (1975) ("state courts are the ultimate expositors of state law").

[62] *See Bradshaw*, 546 U.S. at 76-78 ("Because the Sixth Circuit disregarded the Ohio Supreme Court's authoritative interpretation of Ohio law, its ruling on sufficiency of the evidence was erroneous.").

that the state supreme court's statement of the law was dictum if it is perfectly clear and unambiguous.[63]

A determination of state law by a state intermediate appellate court is also binding in a federal habeas action.[64]  This is especially true where the highest court in the state has denied review of the lower court's decision.[65]

A petitioner may not transform a state-law issue into a federal one by simply asserting a violation of due process.[66]  Nor may a federal court issue a habeas writ based upon a perceived error of state law, unless the error is sufficiently egregious to amount to a denial of due process under the Fourteenth Amendment.[67]  "[A]bsent a specific constitutional violation, federal habeas corpus review of trial error is limited to whether the error 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"[68]  "Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension."[69]  Claim 11 is without merit.

---

[63] *Id.* at 76.

[64] *See Hicks v. Feiock,* 485 U.S. 624, 629-30 & n.3 (1988) (noting state appellate court's determination of state law is binding and must be given deference).

[65] *Id.*; *see West,* 311 U.S. at 237 ("This is the more so where, as in this case, the highest court has refused to review the lower court's decision rendered in one phase of the very litigation which is now prosecuted by the same parties before the federal court."); *Shannon v. Newland*, 410 F.3d 1083, 1087 (9th Cir. 2005) (same).

[66] *Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir. 1996).

[67] *See Pulley v. Harris*, 465 U.S. 37, 41 (1984) (*dictum*).

[68] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).

[69] *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 345 (2006) (quoting *Smith v. Philips*, 455 U.S. 209, 221 (1982)); *see Wainwright v. Goode*, 464 U.S. 78, 86 (1983) (per curiam).

Claim 12

In Claim 12 Wolfe contends that appointing Richard K. Corbin presented a conflict of interest because both Corbin, and his previous attorney, Joel L. Deckler, were members of the Indigent Defense Panel.  Specifically, Wolfe claims that Deckler rendered ineffective assistance and that Corbin subsequently refused to investigate this claim because the two were members of the same organization–the Indigent Defense Panel.

"In order to establish a violation of the Sixth Amendment, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance."[70]  Wolfe has failed to carry this burden.  Contrary to Wolfe's assertion, the Indigent Defense Panel is not a "law firm."  Rather, Sacramento County provides criminal defense counsel when the Public Defender's Office has a conflict in a case and cannot represent the criminal defendant and the Conflict Criminal Defenders' office cannot provide representation.  This representation is provided by private attorneys who have all been appointed to the panel.  Aside from the fact that Corbin and Deckler were both members of the Indigent Defense Panel, Wolfe has not alleged facts which would support finding an actual conflict.  In fact, Wolfe's only complaint is that counsel somehow prevented him from pursuing his insanity defense.  These facts do not establish an actual conflict of interest.[71]  Furthermore, Wolfe has not cited a single Supreme Court decision, based on constitutional grounds, that supports his position, and independent research by this Court has not uncovered such a case.[72]  Claim 12 is without merit.

---

[70] *Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980).

[71] *Id.* at 349 (Defendant's claim of an alleged conflict was not supported by a showing that the conflict resulted in ineffective assistance of counsel which rendered his plea involuntary and unintelligent, and therefore was without merit).

[72] 28 U.S.C. § 2254(d); *see Williams*, 529 U.S. at 404-06; *see also Lockyer,* 538 U.S. at 70-75 (explaining this standard).

<u>Claim 13</u>

In claim 13, Wolfe contends that the trial court erred by not conducting a proper *Faretta* hearing prior to allowing Wolfe to represent himself during his sentencing on his plea.[73] According to the record, after the trial court denied Wolfe's motion to withdraw his plea, Wolfe moved to represent himself at sentencing.  Wolfe contends the court did not conduct a proper *Faretta* hearing because it did not consider the effects Wolfe's psychotropic medication had on his ability to represent himself.  Respondent contends that Wolfe's no contest plea prohibits him from raising this issue on the basis of *Tollett*.  Respondent is incorrect; *Tollett* prohibits claims based on  pre-plea constitutional violations.[74]  However, this alleged violation took place after Wolfe entered a plea of no contest, before his sentencing.  Accordingly, *Tollett* does not prohibit Wolfe from raising this claim.

"If a defendant's request to proceed pro se is timely, not for purposes of delay, unequivocal, voluntary, intelligent and the defendant is competent, it must be granted."[75] *Faretta* does not answer the question of competence because it did not consider the problem of mental competency.[76]  Although dealing with mental competency in the context of mental illness as applied to self-representation under *Faretta,* the recent decision of the Supreme Court in *Indiana v. Edwards*[77] provides some guidance.  In *Edwards*, the Supreme Court declined to adopt a bright-line test for determining when a criminal defendant lacked sufficient mental capability

---

[73] The term "*Faretta* motion" comes from *Faretta v. California*, 422 U.S. 806, 819-820 (1975), holding that the Sixth Amendment grants a criminal defendant the right of self-representation to make one's own defense personally.

[74]  *See Hill,* 474 U.S. at 56-57; *Tollett,* 411 U.S. at 267.  Cal. Penal Code § 1016 ("A plea of nolo contendere shall be considered the same as a plea of guilty . . . .  The legal effect of such a plea, to a crime punishable as a felony, shall be the same as that of a plea of guilty for all purposes."); *see also Ortberg,* 961 F.2d at 137-38 (applying *Tollett* to no contest plea).

[75] *United States v. Maness,* 566 F.3d 894, 896 (9th Cir. 2009).

[76] *Cf. Faretta*, 422 U.S. at 835 (Faretta was "literate, competent and understanding").

[77]  554 U.S. 164 (2008).

19

to conduct his own defense.  Instead, the Supreme Court left it to the discretion of the trial judge to "take realistic account of the particular defendant's mental capacities" "tailored to the individualized circumstances of a particular defendant."[78]

Wolfe presented this issue with the California Supreme Court in a petition for review and it was rejected on the merits.  Wolfe is only entitled to relief if that decision was contrary to clearly established Federal law, as determined by the Supreme Court of the United States or involved "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[79]

Although Wolfe has not directly asserted that he was not competent to stand trial, this Court must consider that issue.  A defendant's right to not be tried if mentally incompetent under due process requires procedures designed to guard jealously that right during trial.[80]  "The trial court must continually be alert to circumstances suggesting a change that would render the accused unable to meet the standards of competence to stand trial."[81]   For purposes of AEDPA review, it is clearly established Supreme Court precedent in the Ninth Circuit that a trial court must order a competency hearing *sua sponte* whenever there is a bona fide doubt about the defendant's mental competency.[82]   A bona fide doubt exists where "a reasonable judge, situated as was the trial court judge whose failure to conduct an evidentiary hearing is being reviewed, should have experienced a doubt with respect to competency to stand trial."[83]   A defendant's history of mental illness, demeanor at trial, defense counsel's opinion, and available psychiatric

---

[78] *Id.* at 176-78.

[79] 28 U.S.C. § 2254(d); *see Williams*, 529 U.S. at 404-06; *see also Lockyer,* 538 U.S. at 70-75 (explaining this standard).

[80]  *See Pate v. Robinson*, 383 U.S. 375, 385 (1966); *Drope v. Missouri*, 420 U.S. 162 (1975).

[81]  *Drope*, 420 U.S. at 181.

[82]  *Maxwell v. Roe,* 606 F.3d 561, 568 (9th Cir. 2010).

[83]  *Id.* (quoting *de Kaplany v. Enomoto*, 540 F.2d 975, 983 (9th Cir. 1976) (en banc)).

20

evaluations are all factors to be considered, but no one factor is necessarily sufficient to raise a bona fide doubt regarding mental competence.[84]  Furthermore, a "state trial and appellate courts' findings that the evidence did not require a competency hearing under *Pate* are findings of fact to which [the reviewing court] must defer unless they are 'unreasonable' within the meaning of 28 U.S.C. § 2254(d)(2)."[85]

After reviewing the record, there was no bona fide doubt about Wolfe's mental competency that would have triggered the trial court's duty to hold a competency hearing.  The record is clear that the court was aware that defendant was taking medications for schizophrenia and depression.[86]  The court asked Wolfe whether he felt the medications impaired his faculties or his ability to understand what the court was telling him with respect to his rights.[87]  Wolfe responded that his medication did not affect him in this manner.  The court then observed that Wolfe had answered all of the questions posed to him in an appropriate manner.  The court also noted that Wolfe's speech did not appear to be affected by his medications.  On direct appeal, the California Court of Appeal also observed that the trial court made several findings with respect to Wolfe's cognitive abilities: the court found Wolfe "at all times" to be "extremely articulate, as shown by his writing and ability to analyze, and that he was a "highly intelligent individual."[88]  Finally, after investigating the merits of Wolfe's motion for a new trial, independent counsel concluded that there was nothing to indicate that Wolfe was incompetent or otherwise mentally disabled at the time of his plea.[89]  The record is clear that, aside from the fact that Wolfe was on medication, there was nothing to indicate that he was mentally incompetent or unable to stand

---

[84]  *See Pate,* 383 U.S. at 387.

[85]  *Davis v. Woodford*, 384 F.3d 628, 644 (9th Cir. 2003) (internal quotations omitted).

[86]  RT 129, 130, 133, 137.

[87]  RT 106.

[88]  Lodged Doc. 9, p. 12.

[89]  R.T. 128.

trial. Thus, because the Court of Appeal's findings that Wolfe was highly articulate and intelligent, and possessed strong analytical skills have not been shown to be 'unreasonable' within the meaning of 28 U.S.C. § 2254(d)(2)" the trial court did not violate Wolfe's rights by proceeding without holding a full competency hearing.[90]

With respect to Wolfe's claim regarding the *Feretta* motion, the record clearly indicates that the court conducted a thorough, *en camera* screening with Wolfe before allowing him to represent himself.  The court had Wolfe execute a written waiver of counsel which advised him of several facts, including: the possible sentences he faced; the fact that it was not wise to represent himself in a criminal matter; the fact that the court could not help him against his opposition, a trained lawyer; that he could not appeal on the claim that he was incompetent as counsel, and; that he must comply by the rules of criminal procedure and evidence.[91]  As noted above, it is also clear that the trial court was aware Wolfe was taking medication.  Thus, the record indicates that the trial court was informed of Wolfe's use of medications and conducted a thorough inquiry to ensure that Wolfe was capable of representing himself.

Wolfe has failed to show the decision of the California Supreme Court to deny Wolfe's claim was contrary to clearly established Federal law or involved "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[92] Claim 13 is without merit.

<u>Claim 15</u>

In Claim 15, Wolfe contends that his appellate counsel was ineffective for failing to provide him with an opportunity review the full record.  Although Wolfe's argument is not entirely clear to this Court, it appears that Wolfe asserts that one of the police reports contained

---

[90] *Davis v. Woodford*, 384 F.3d 628, 644 (9th Cir.2003) (internal quotations omitted).

[91] CT 137.1

[92] 28 U.S.C. § 2254(d); *see Williams*, 529 U.S. at 404-06; *see also Lockyer* , 538 U.S. at 70-75 (explaining this standard).

in the record was not complete.  Specifically, page three of the police report documenting Wolfe's arrest on February 3, 1999.

As noted above, to demonstrate ineffective assistance of counsel, Wolfe must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense.[93]  A deficient performance is one in which counsel made errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment.[94]  Wolfe must show that defense counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different.[95]  Wolfe has not met his burden.

The record is clear that Wolfe was sentenced to state prison based only on his no contest plea to possession of cocaine and heroin on June 4, 1999.  The three charged offenses associated with the incident on February 3, 1999, were all dismissed.  Thus, even if Wolfe had been able to review the missing page of Officer Beamer's report, he would not have been able to challenge the February 3, 1999, arrest, since all of the charges arising from that arrest were dismissed. Claim 15 is without merit.

<u>Claim 16</u>

In claim 16, Wolfe contends that his counsel was ineffective because he failed to discover that Wolfe had not been convicted of some of the offenses used to enhance his sentence. Specifically, Wolfe asserts that he was not convicted of a Cal. Penal Code § 211 violation on July 22, 1985, and that he was never convicted of a Cal. Penal Code § 496 violation on May 5, 1991.[96]

---

[93] *Strickland*, 466 U.S. at 687.

[94] *Id*.

[95] *Hill,* 474 U.S. at 57.

[96]  Wolfe's criminal history indicates that he was arrested for receiving stolen property on February 8, 1991.  CT 137.8  Thereafter, he was convicted for that offense on March 5, 1991, and sentenced to state prison on March 13, 1991.  CT 137.8, 137.30.  Therefore, Wolfe's

As noted above, to demonstrate ineffective assistance of counsel, Wolfe must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense.[97]   Wolfe has failed to show that, but for the alleged error, that the result of his sentencing would have been different.  At the time of sentencing, it was determined that Wolfe had not been convicted of, nor had he served a prior prison term for, receiving stolen property on March 31, 1992.  At that point, that enhancement was dismissed by the court upon the motion of the People.[98]  Because the enhancement was corrected, Wolfe is unable to show that the mistake affected his sentencing.  Wolfe's criminal history also indicates that on July 19, 1985, a jury convicted him of robbery, along with some other offenses.[99]  On July 22, 1985, the matter was referred to probation and, on October 18, 1985, he was sentenced to state prison on the robbery conviction.[100]  Wolfe is correct that he was not actually convicted on July 22, 1985, however the evidence indicates that this typographical error had no effect on his sentencing.  The consolidated information alleged that Wolfe had served three previous prison sentences one of which resulted from the July 22, 1985.  The thrust of this allegation was that Wolfe had served a prison sentence for the conviction; a typographical error regarding the date of the conviction does not somehow negate the prison sentence Wolfe served.  Wolfe is unable to show that had his counsel corrected the date of the conviction, the resulting sentence would have differed.

---

contention that he did not suffer a March 5, 1991, conviction is belied by the record.  However, during sentencing there was some confusion as to whether Wolfe had been convicted of or had served a prior prison term for receiving stolen property on March 31, 1992.  In order to give Wolfe the benefit of this confusion, this Court will assume that Wolfe meant to assert that he was never convicted of or had served a prior prison term for receiving stolen property on March 31, 1992.

[97] *Strickland* 466 U.S. at 687.

[98]  RT 138-139.

[99]  CT 137.7.

[100]  CT 137.7, 137.29.

To the extent that Wolfe argues that his enhancements violate the *Ex Post Facto* Clause of the United State Constitution, his argument is without merit.[101]  The enhancement statute was not a penalty for the prior offense, but rather sought to punish the repetitive nature of the most recent offense.[102]  Claim 16 is without merit.

Claim 18

In claim 18, Wolfe contends that psychologist Dr. Wendy Weiss conspired with attorney Emmett Mahle to formulate a report to justify not investigating an insanity defense.  Specifically, Wolfe argues that he was not "sane" during either his plea or the offense, and that Dr. Weiss tailored her report to cover up trial counsel's negligence with respect to the "arraignment error."

It is not entirely clear to this Court the exact argument Wolfe raises in this claim.  As noted in this Court's discussion of Claims 2 and 3, Wolfe was properly arraigned.  Therefore, there was no "arraignment error" to "cover up."  To the extent that Wolfe argues he should have been "allowed" to plead not guilty by reason of insanity, he does not demonstrate how Dr. Weiss' evaluation, which was conducted for the purpose of investigating Wolfe's allegations in his motion to withdraw his plea, inhibited his ability to enter this plea.  Indeed, before Wolfe entered his plea of "no contest, " he informed the court that his medication did not make him feel fuzzy or odd in any way and that he understood everything the court had said with respect to his rights.  Simply put, Wolfe has not raised an issue of "Federal law, as determined by the Supreme Court of the United States."[103]  Claim 18 is without merit.

---

[101]  *McDonald v. Massachusetts,* 180 U.S. 311, 312-13 (1901); *Fong v. United States,* 287 F.2d 525, 526 (9th Cir. 1961) (citing *McDonald*).

[102]  *McDonald,* 180 U.S. at 312-13.

[103]  28 U.S.C. § 2254(d); *see Williams*, 529 U.S. at 404-06; *see also Lockyer*, 538 U.S. at 70-75 (explaining this standard).

Claims 20 and 21

In claim 20, Wolfe claims that he was not arraigned in Case No. 99F04609 and that counsel was not appointed to represent him until June 28, 1999.  In claim 21, Wolfe argues that trial counsel was ineffective for failing to investigate the applicable laws relating to his arraignment on charges stemming from his June 4, 1999, arrest.  In this Court's treatment of claims 2 and 3[104] this Court observed that Wolfe was properly arraigned and replacement counsel was promptly appointed when Wolfe terminated his retained counsel.  Thus, there was no "arraignment error" for counsel to raise.  Claims 20 and 21 are without merit.

CONCLUSION AND ORDER

Wolfe is not entitled to relief under any ground raised in the Petition.  Accordingly,

**IT IS HEREBY ORDERED THAT** the Petition Under 28 U.S.C. § 2241 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability.  Any further request for a Certificate of Appealability must be addressed to the Court of Appeals.[105]

The Clerk of the Court is to enter judgment accordingly.

Dated: January 19, 2011

_____/s/ James K. Singleton, Jr._____
**JAMES K. SINGLETON, JR.**
United States District Judge

---

[104] *Ante*, pp. 8-11.

[105] *See* Fed. R. App. P. 22(b); Ninth Circuit R. 22-1.